UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

HYDRAULICS INTERNATIONAL, INC.,

      Plaintiff,

v.                                         Case No. 20-CV-371

AMALGA COMPOSITES, INC.,

      Defendant.

## FINAL PRETRIAL ORDER

On March 20, 2023, the court conducted a final pretrial conference. A jury trial is scheduled to commence on **April 24, 2023, at 8:30 AM** in Courtroom 242 of the United States Courthouse, 517 E. Wisconsin Avenue, Milwaukee, Wisconsin.

Based upon the court's consideration of the parties' pretrial reports and the statements of counsel, for the reasons more fully stated on the record, the court enters the following Order, which shall govern the trial in this matter:

1. The court has set aside four days in which to try this case.

2. An eight-person jury will be selected. Its verdict shall be unanimous.

3. The court will voir dire the entire jury pool. Following voir dire, the court will entertain motions to strike for cause. From the first 14 remaining prospective

jurors the parties will each exercise three peremptory strikes per side to arrive at a final eight-person jury.

4. The jurors will not be permitted to ask questions of witnesses.

5. The jurors will be permitted to take notes.

6. All exhibits received in evidence will be sent to the jury room during jury deliberation unless a specific objection to the exhibit or portion thereof is raised by a party following the conclusion of the trial. The jury will receive a copy of the jury instructions, and each juror will receive a copy of the special verdict for their deliberations.

7. If a party wishes to publish an exhibit to the jury, the party must utilize demonstrative means to make that exhibit visible to all jurors simultaneously and/or provide each juror with a paper copy of the exhibit.

8. Upon request made at least 10 days before the start of trial, the court expects to be able to provide the parties with a screen, document camera, and projector (suitable for connection to party-supplied laptops). Parties wishing to use any court-provided technology must contact the court's deputy clerk at 414-297-3128.

9. The parties are responsible for supplying any other electronic equipment necessary to facilitate the presentation of their case. Parties wishing to deliver or set up equipment in the courtroom in advance of trial must contact the court's deputy clerk at 414-297-3128 at least seven days before trial to schedule a time.

10. Each party is responsible for ensuring the appearance of any witness the party intends to call to testify.

11. Only a single attorney for each party shall examine or cross-examine any individual witness.

12. Only if absolutely necessary are parties to ask for a side-bar conference if the jury is present. Ordinarily, if additional argument or explanation is necessary regarding an objection, the objection should be raised and the party should request to be heard at the next break.

13. Trial days shall begin at 8:30 A.M., with a break in the morning, roughly one hour for lunch, an afternoon break, and court will adjourn for the day at 5:00 P.M.

14. The parties shall compile a single joint exhibit list, eliminating duplicate exhibits.

15. The parties shall compile one or more binders containing their collective exhibits. In addition to sets for counsel, not later than 4:30 PM, **April 20, 2023**, the parties shall deliver to the court one set of the exhibits for the court and one set for the witness. The exhibits for the witness will be considered the official exhibits and shall be sent to the jury.

16. As to Hydraulics's request to have its "non-control group witnesses who live in Utah" and Michael Petrogeorge testify by Zoom (ECF No. 107 at 9), the request is denied. "For good cause in compelling circumstances and with appropriate

safeguards, the court may permit testimony in open court by contemporaneous transmission from a different location." Fed. R. Civ. P. 43(a). Thus, a proponent must clear two hurdles—good cause and compelling circumstances. The fact that these witnesses live beyond the subpoena power of the court, *see* Fed. R. Civ. P. 45(c), is good cause. However, Hydraulics has not shown compelling circumstances. In many ways, Rule 43(a) is anachronistic. It dates to 1996, a time when remote testimony generally meant testifying by phone and videoconferencing was expensive and unfamiliar. Today, videoconferencing is ubiquitous both in courts and private life. Federal courts have even conducted entire trials by videoconference. *Steele v. Nat'l R.R. Passenger Corp.*, 599 F. Supp. 3d 1039, 1042 (W.D. Wash. 2022); *Goldstine v. FedEx Freight Inc.*, No. C18-1164 MJP, 2021 U.S. Dist. LEXIS 46478, at *43 (W.D. Wash. Mar. 11, 2021); *Bao Xuyen Le v. Reverend Martin Luther King, Jr. Cty.*, 524 F. Supp. 3d 1113 (W.D. Wash. 2021); *Kieffaber v. Ethicon, Inc.*, No. 20-1177-KHV, 2021 U.S. Dist. LEXIS 22956 (D. Kan. Feb. 8, 2021). The Comments to the 1996 Amendment that first authorized remote testimony state: "The importance of presenting live testimony in court cannot be forgotten. The very ceremony of trial and the presence of the factfinder may exert a powerful force for truthtelling. The opportunity to judge the demeanor of a witness face-to-face is accorded great value in our tradition. Transmission cannot be justified merely by showing that it is inconvenient for the witness to attend

4

the trial." Fed. R. Civ. P. 43 (Notes of the Advisory Committee on Rule – 1996 Amendment). The Comments seem to overlook that the alternative to allowing testimony via a platform such as Zoom often is not the witness appearing in court but rather the reading of the witness's deposition. *See* Fed. R. Civ. P. 32. While video testimony may afford an imperfect means for scrutinizing a witness's demeanor, the reading of a deposition gives the jury *no* means to do so. To avoid dryly reading a deposition—a procedure that jurors often seem to find tedious and un-engaging—a party may resort to playing a video deposition. Ironically, that video testimony may have been conducted entirely by videoconference, *see* Fed. R. Civ. P. 30(b)(4), and thus, in some respects, we end up largely back where we started with a request for video testimony under Rule 43(a). The distinction, however, is that recorded testimony still lacks the spontaneity and immediacy of live testimony—even live video testimony—that tends to keep jurors engaged. And it results in the inefficiency of the parties having to conduct the deposition and then sit through it as it is played for the jury. Nonetheless, the text of the Rule and the Comments to the 1996 Amendments suggest that compelling circumstances must mean more than the problems that exist in every case when a witness is beyond the reach of the trial court's subpoena power. The circumstances presented by Hydraulics simply are not compelling. We are no longer in the peak of the pandemic where travel was

not feasible. *See, e.g., House v. Players' Dugout, Inc.*, Civil Action No. 3:16-cv-00594-RGJ, 2021 U.S. Dist. LEXIS 202789, at *43 (W.D. Ky. Oct. 20, 2021) (citing cases). The witnesses are not prisoners whose transport would require inordinate manpower or pose a risk to public safety. *See, e.g., Thornton v. Snyder*, 428 F.3d 690, 698 (7th Cir. 2005); *Badgett v. Lueneburg*, No. 17-C-49, 2018 U.S. Dist. LEXIS 192106, at *1-*2 (E.D. Wis. Nov. 9, 2018). They are not involved in crucial life-saving work such that the burdens of travel would imperil the health and safety of others. *Sallenger v. City of Springfield*, No. 03-3093, 2008 U.S. Dist. LEXIS 52607, at *3 (C.D. Ill. July 8, 2008). In sum, while the court recognizes the practical benefits of allowing video testimony under the circumstances presented, the current version of Rule 43(a) compels the court to deny Hydraulics' request.

17. Amalga's first motion in limine (ECF No. 10 at 1-5) is denied without prejudice. Whether any statement is improper hearsay will depend on the facts and circumstances of its proposed admission at trial.

18. Amalga's second motion in limine (ECF No. 110 at 5-7) is denied without prejudice. Whether any testimony or argument is improper speculation will depend on the facts and circumstances of its proposed admission at trial.

19. Amalga's third motion in limine (ECF No. 110 at 8-10) is denied without prejudice. Whether any particular evidence is relevant will depend on the facts and circumstance of trial.

20. Amalga's fourth motion in limine (ECF No. 110 at 10-11) is granted with the exception of each party's corporate representative, who may be present throughout the trial, and Hydraulics' expert Randall Nish, who may be present during the testimony of Gregg Piper.

21. Amalga's fifth motion in limine (ECF No. 110 at 11-13) is granted. Based on the parties' representations during the pretrial conference, Carmen Ureche performed certain tests at the request of Hydraulics as part of its initial investigation of the issues that led to this action. She did not provide a report in accordance with Rule 26(a)(2)(B). But because there is no indication she was retained or specially employed to provide expert testimony, she was not required to. Her role in the preliminary stages of the events that led to this action was more akin to what a treating physician may do in a personal injury action. However, even experts who do not need to provide a report must be timely disclosed by the deadline set by the court. Hydraulics admits that Ureche was not timely disclosed as an expert. Nonetheless, Hydraulics argues that Ureche was timely disclosed as a rebuttal expert under Rule 26(a)(1)(D)(ii). Because the court did not set a deadline for disclosing rebuttal experts, Hydraulics had 30 days from Amalga's disclosure of testimony that Ureche plans to rebut. However, rebuttal experts can only rebut other experts. *See* Fed. R. Civ. P. 26(a)(1)(D)(ii) (citing Rule 26(a)(2)(B) or (C)). The disclosure that allegedly

triggered Ureche's rebuttal was testimony by non-expert Amalga employees. While Hydraulics contends that Amalga will seek to introduce what is essentially expert testimony through these lay witnesses, the court will not permit Amalga to cross the line into improper expert testimony. If those witnesses do not offer expert testimony (and the court will not permit them to do so unless Amalga complied with the disclosure requirements of Rule 26), then there is no expert opinion for Ureche to rebut. Insofar as Hydraulics seeks to have Ureche "rebut" the lay testimony of Amalga employees, that is not within the scope of Rule 26(a)(1)(D)(ii) and, therefore, Hydraulics's disclosure of Ureche is untimely.

22. Amalga's sixth motion in limine to bar Hydraulics from arguing that jurors should "send a message," "get the company's attention," "punish," "put profits first," "any similar statement" or to argue that "Amalga is not accepting responsibility by virtue of its defense" is denied without prejudice. While the specific statements that Amalga identifies are improper given the absence of a punitive damages claim, it is not the court's practice to preemptively address in a motion in limine conduct that is clearly out-of-bounds lest some unforeseen or nuanced exception should arise, leaving the parties to delve into a dispute over the scope and meaning of the court's order rather than the bounds of appropriate trial conduct. The court trusts that all counsel will remain within the bounds of

proper argument. Independent of any motion in limine, the court will address any improper conduct at trial.

23. Amalga's seventh motion in limine (ECF No. 110 at 15-18) to bar Hydraulics from arguing that Amalga's product caused or was involved in Kraken's customers' "field failures" is denied without prejudice. Whether there is an adequate foundation for any testimony, evidence, or argument will depend upon the facts and circumstances regarding how it is presented at trial.

24. Amalga's eighth motion in limine (ECF No. 110 at 19) is granted. Each side shall disclose every witness it intends to call at trial at least 24 hours in advance.

**SO ORDERED.**

Dated at Milwaukee, Wisconsin this 21st day of March, 2023.

_William E. Duffin_
WILLIAM E. DUFFIN
U.S. Magistrate Judge